1099 NEW YORK AVENUE NW, STE. 900, WASHINGTON, DC 20001

**JENNER&BLOCK** LLP

July 29, 2026

Via ECF

Clifton B. Cislak
Clerk of Court
United States Court of Appeals for the District of Columbia Circuit
333 Constitution Avenue NW
Washington, DC 20001

Re:     ***Chamber of Commerce of the United States of America et al. v.
         United States Department of Homeland Security et al.***, No. 25-5473

         Rule 28(j) Letter re: *California v. Mullin*, No. 26-1699 (1st Cir. July 24, 2026)

Dear Mr. Cislak:

The First Circuit has denied the government's motion to stay the district court's order in *California v. Mullin*, No. 26-1699 (1st Cir. July 24, 2026), about which Plaintiffs-Appellants previously notified this Court. Plaintiffs-Appellants' Rule 28(j) Letter (D.C. Cir. June 10, 2026), Doc. 2178086. In *California*, the district court vacated agency actions implementing the Proclamation challenged here; the First Circuit's adoption of the district court's reasoning supports reversal.

*First*, the First Circuit affirmed that the requirement that Congress "speak 'clearly'" when delegating its taxing power "'clearly' applies whenever the executive claims 'discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as fees or taxes.'" Op.4 (quoting *Skinner v. Mid-American Pipeline Co.*, 490 U.S. 212, 224 (1989)). It rejected Defendants' "mistaken reliance" on *FCC v. Consumers' Research*, 606 U.S. 656 (2025), because, while *FCC* noted that delegations of taxing power are permissible, it did not disturb the rule that such delegations must be explicit. Op.4. The $100,000 fee here constitutes a clear exercise of Congress's taxing power—without a clear statement authorizing it. *See* Br.17-21, 35-38, 44-45; Reply Br.4-6, 11-12.

*Second*, the First Circuit applied *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026), which reasoned that the word "regulation," "synonymous with the word 'restriction,'" does not "include[] the power to impose a tax." Op.5 (quoting *Learning Res.*, 607 U.S. at 254). So too here: "restrictions," "regulations," and "limitations" in the INA do not confer the power to tax entry. *See* Br.34-47; Reply Br.11-17.

*Third*, the First Circuit rejected the idea that agency implementation of the Proclamation is not "final agency action," finding the government's assertion that agency implementation has conferred no "rights or obligations" was inconsistent with its argument that, absent a stay, "every day . . . more aliens can petition and enter the country." Op.6. The government's position before

CENTURY CITY   CHICAGO   LONDON   LOS ANGELES   NEW YORK   SAN FRANCISCO   WASHINGTON, DC          JENNER.COM

the First Circuit only underscores that "agencies have made clear decisions to implement the Proclamation" and are now doing so via actions that "carry the force of law." *See* Br.51-52.

Sincerely,

Jenner & Block LLP

By: /s/ Adam G. Unikowsky
    Adam G. Unikowsky

# United States Court of Appeals
## For the First Circuit

_____

No. 26-1699

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,

Plaintiffs, Appellees,

v.

MARKWAYNE MULLIN, in the official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in the official capacity as Secretary of State; UNITED STATES DEPARTMENT OF STATE; KEITH E. SONDERLING, in the official capacity as Acting Secretary of Labor; UNITED STATES DEPARTMENT OF LABOR; TODD BLANCHE, in the official capacity as Acting Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; UNITED STATES,

Defendants, Appellants.

_____

Before

Barron, <u>Chief Judge</u>,
Gelpí and Rikelman, <u>Circuit Judges</u>.

_____

**ORDER OF COURT**

Entered: July 24, 2026

Before us is a motion to stay, pending appeal to this Court, a district court order and final judgment that vacated actions taken by officials at the U.S. Department of Homeland Security ("DHS") and the U.S. Department of State ("DOS") to implement a presidential proclamation requiring that a $100,000 payment accompany all H-1B visa petitions.  In doing so, the United

States District Court for the District of Massachusetts agreed with the plaintiffs -- a set of twenty states[1] -- that the actions the officials and their respective agencies (collectively, "the defendants") took violated the Administrative Procedure Act ("APA") and were otherwise unconstitutionally ultra vires.  We deny the motion.

## I.

The H-1B program permits employers to petition the government for temporary visas that allow nonimmigrant foreign workers in "specialty occupation[s]," which usually require at least a bachelor's degree, to work in the United States.  See 8 U.S.C. § 1184(c), (i).  On September 19, 2025, President Donald Trump issued a proclamation (the "Proclamation") requiring that a $100,000 payment accompany each H-1B petition.  See Proclamation No. 10973, Restriction on Entry of Certain Nonimmigrant Workers, 90 Fed. Reg. 46027 (Sep. 19, 2025).  To implement the $100,000 payment requirement, the Proclamation directs (1) the Secretary of Homeland Security to "restrict decisions" on H-1B petitions "not accompanied by a $100,000 payment" for individuals "who are currently outside the United States," while also permitting the Secretary, at his discretion, to make exceptions to the payment requirement for certain individuals, companies, or industries; (2) the Secretary of State to limit H-1B petition approvals to those petitions accompanied by the $100,000 payment; and (3) both Secretaries to "coordinate to take all necessary and appropriate action to implement th[e] [P]roclamation and to deny entry" to H-1B petitioners whose petitions do not satisfy the $100,000 payment requirement.  Id. at 46028-29.

The President claimed authority to require the $100,000 payment under two provisions of the Immigration and Nationality Act that are codified at 8 U.S.C. §§ 1182(f) and 1185(a).  See id. at 46028.  Section 1182(f) provides that "[w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate."  Section 1185(a), in turn, permits the president to implement -- upon the departure and/or entry of any "alien" -- "reasonable rules, regulations, and orders" and "limitations and exceptions."  The Proclamation finds that some employers had "abused" the H-1B program, leading to various negative labor market outcomes for American workers, including lower wages and "large-scale replacement" by foreign workers, thereby undermining the "economic and national security" of the United States.  90 Fed. Reg. at 46027-28.

Between September 19, 2025, and October 20, 2025, officials at DHS and DOS took, all together, ten different actions to implement the Proclamation.  Those actions included DOS's issuance of answers to "Frequently Asked Questions," which noted that the Proclamation's payment requirement applied prospectively, and DHS's issuance of a revised fee schedule, which set forth the new $100,000 payment requirement.  In accord with the plaintiffs' chosen terminology, we will refer to these actions collectively as "the Policy."

---

[1] Those states are California, Massachusetts, Arizona, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, and Wisconsin.

On December 12, 2025, the plaintiffs filed suit, challenging the defendants' implementation of the Proclamation via the Policy under the APA and for being ultra vires and unconstitutional.[2]   They alleged -- and the district court found -- "that the imposition of the $100,000 H-1B payment requirement negatively impacts [the plaintiffs'] ability to staff publicly run colleges and universities, primary and secondary schools, and healthcare systems."  Those impacts would then, as the district court put it, "exacerbate staffing shortages in these sectors and endanger [p]laintiffs' ability to provide important medical and educational services."

With respect to the APA, the plaintiffs alleged that the defendants violated that statute's procedural requirements under 5 U.S.C. § 706(2)(D); its bar on arbitrary-and-capricious final agency actions under 5 U.S.C. § 706(2)(A); and its bar on final agency actions taken in excess of statutory authority under 5 U.S.C. § 706(2)(C).  As relief, the plaintiffs: (1) sought a declaratory judgment stating that the Policy "is unlawful because it exceeds the executive branch's constitutional and statutory authority"; (2) asked the district court to vacate and set aside the Policy under 5 U.S.C. § 706(2); and (3) sought an injunction barring the defendants "from taking any actions with respect to Plaintiff States, their agencies, or their political subdivisions intended to give effect to the Proclamation or Policy."

Between early February and early April, the parties filed cross motions for summary judgment.  The district court then held a hearing on the motions on May 29, 2026.  On June 8, 2026, the district court issued a Memorandum and Order -- and a corresponding judgment -- granting the plaintiffs' motion for summary judgment, after agreeing with the plaintiffs as to all their claims against the defendants.  The district court also denied the defendants' cross-motion.  In so doing, the district court declared "[t]he Policy implementing the Proclamation . . . unlawful and . . . VACATED [it]," under 5 U.S.C. § 706(2), "in its entirety."

The defendants then filed a motion requesting that the district court: (1) stay its order and judgment pending the defendants' appeal to this Court or, alternatively, (2) enter an administrative stay of the order and judgment while the defendants sought emergency relief from this Court.  The district court declined to stay its order and judgment pending appeal but administratively stayed the order pending our resolution of the defendants' emergency stay motion, which is now before us.

## II.

"'A stay is an intrusion into the ordinary processes of administration and judicial review' and is not granted as 'a matter of right.'"  Washington v. U.S. Dep't of Hous. & Urb. Dev., 171 F.4th 473, 488 (1st Cir. 2026) (quoting Nken v. Holder, 556 U.S. 418, 427 (2009)).  As the party seeking a stay, the defendants bear the burden of showing that the circumstances justify such "extraordinary relief" under Nken's four-factor test, which asks: (1) whether the defendants have "made a strong showing that [they are] likely to succeed on the merits of [their] appeal"; (2) whether they "will be irreparably injured absent a stay"; (3) "whether issuance of the stay will

---

[2] The plaintiffs also named as defendants the Department of Justice, the Attorney General, the Department of Labor, and the Secretary of Labor, but the district court dismissed without prejudice the plaintiffs' claims against those parties.

substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." New York v. Kennedy, 155 F.4th 67, 72 (1st Cir. 2025) (citation modified) (quoting Nken, 556 U.S. at 426). "The first two factors 'are the most critical.'" Id. (quoting Nken, 556 U.S. at 434). We note further that, in ruling on the defendants' motion, we "are generally limited to addressing the claims and arguments advanced by the parties." Evans-García v. United States, 744 F.3d 235, 239 (1st Cir. 2014) (citation modified).

### III.

We begin with the first Nken factor, which concerns whether the defendants have made a strong showing that they are likely to succeed on the merits of their appeal of the district court's order and judgment. See Nken, 556 U.S. at 426. We note that the plaintiffs' excess-of-statutory-authority APA claim, see 5 U.S.C. § 706(2)(C), if sound, in and of itself fully supports the relief that the defendants seek to have stayed during the pendency of their appeal. Thus, because we conclude that the defendants have not made a "strong showing" that they are likely to succeed in challenging this claim on the merits, we confine our analysis to what the defendants have to say about that claim.

In concluding that the Policy constitutes agency action "in excess of statutory . . . authority," the district court reasoned -- based on Skinner v. Mid-America Pipeline Co., 490 U.S. 212, 224 (1989) -- that given the nature of the $100,000 payment requirement, Congress needed to have clearly delegated the power to the executive to require such a payment. In so doing, the district court emphasized the features of the $100,000 payment requirement that the district court believed made the imposition more like a tax within the meaning of the taxing power that Congress enjoys under Article I of the U.S. Constitution. The defendants, based on Edye v. Robertson, 112 U.S. 580, 589, 595 (1884), disagree with that conclusion because they contend that the $100,000 payment requirement is not a tax in that sense and is instead an "immigration regulation" that Congress could enact pursuant to its powers under the Commerce Clause of Article I.

As the plaintiffs correctly point out, Skinner's admonition that Congress speak "clearly" applies whenever the executive claims "discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes,' on those parties." 490 U.S. at 224. The defendants, however, contend that Skinner did not impose such "a heightened clarity standard," and they rely for this contention on FCC v. Consumers' Research, 606 U.S. 656, 674 (2025), which noted that Skinner did not "create a special nondelegation rule for revenue-raising legislation." But, as the plaintiffs correctly point out, the question here is not whether Congress may delegate the authority in question. It is whether Congress has done so. And as to that question, Skinner does set forth a requirement for the executive to show that Congress spoke "clearly" in conferring "discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes,' on those parties." Skinner, 490 U.S. at 224. This case presents that question, and apart from their mistaken reliance on FCC, the defendants do not explain why such a clear statement is not required here.

The defendants do assert that, even assuming that a clear-statement requirement applies, "the delegation [in §§ 1182(f) and 1185(a)] is sufficient to include a tax just as it was in [Federal Energy Administration v.] Algonquin." 426 U.S. 548 (1976). In support of that argument, the defendants note that in Algonquin, the Supreme Court concluded that a statute authorizing the president to "take such action . . . as he deems necessary to adjust the imports" of certain goods could include requiring certain payments on those goods. Id. at 550-52, 570-71. The defendants then contend that Algonquin's conclusion was rooted in that statute's "sweeping, discretion-conferring language." (Quoting Learning Res., Inc. v. Trump, 607 U.S. 229, 254 (2026).)

The defendants further argue that § 1182(f)'s language "is even broader" than the language at issue in Algonquin because § 1182(f) provides that the president may impose "any restriction[]."[3] They go on to assert that the word "restriction" includes, as a matter of ordinary meaning, "a limitation, qualification, or confinement on an alien's entry" and that the monetary imposition at issue here is an "additional qualification" that must be satisfied before such a person can enter the United States as an H-1B visa holder.

In Learning Resources, Inc. v. Trump, however, the Supreme Court noted that the statutory provisions at issue in Algonquin contained not only "sweeping, discretion-conferring language," but also an "explicit reference" to the duties that the president wished to impose. See Learning Res., 607 U.S. at 254. Thus, because neither § 1182(f) nor § 1185(a), nor any other relevant H-1B-related provision, references the imposition of the kind of payment requirement at issue, we fail to see how Algonquin makes it likely that the defendants will prevail in showing that the Policy was not in excess of statutory authority.

Moreover, although the phrase "any restriction" is plainly broad, the Supreme Court recently had occasion in Learning Resources to determine whether a word that it identified as synonymous with the word "restriction" -- "regulation" -- included the power to impose a tax. 607 U.S. at 249. And, in determining that the word did not include a "tax," the Court, in part, looked to Congress's pattern of usage of that term. Id. at 249-51. The defendants develop no argument as to why it would not similarly make sense to look to the pattern of usage of the term "restriction," especially given Skinner's clear-statement requirement. And the defendants fail to do so even though -- as the district court indicated -- Congress' pattern of usage suggests that when it imposes fees or delegates fee-imposing authority under the INA, it does so explicitly. See, e.g., 8 U.S.C. § 1184(c)(9)(A) ("The Attorney General shall impose a fee on an employer . . . filing . . . a petition . . . ."); id. § 1184(c)(11)(A) ("[T]he Secretary of Homeland Security or the Secretary of State, as appropriate, shall impose a fee . . . ."); id. § 1184(c)(12)(A) ("[T]he Secretary of Homeland Security shall impose a fraud prevention and detection fee on an employer filing a petition . . . ."). Moreover, we note, that pattern also indicates that when Congress has done so, it

---

[3] The defendants also appear to rely on 8 U.S.C. § 1185(a)'s language providing that the president may set "reasonable rules, regulations, and orders . . . subject to such limitations and exceptions as [he] may prescribe," but they fail to develop an argument as to that specific language. They therefore have waived any such argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

has specified how the funds should be collected and used.  See id. § 1356(s) (dividing amounts collected under 8 U.S.C. § 1184(c)(9), (11) among various agency officials to be used for "demonstration programs" and STEM education); id. § 1356(m) (authorizing the Attorney General to collect "fees for providing adjudication and naturalization services" at a level to "ensure recovery of the full costs of providing all such services"); id. § 1356(v) (dividing fees collected under 8 U.S.C. § 1184(c)(12)-(13) among various agency officials for fraud detection and prevention).  And, finally, the defendants do not dispute that neither § 1182(f) nor § 1185(a) has ever been used to impose a fee or payment of this kind.  Thus, for this reason as well, we cannot say that the defendants have made the requisite strong showing.

The defendants separately seek to meet their burden under the first Nken factor by contending that the Policy does not constitute "final agency action" and so, for that reason, is simply not reviewable under the APA.  See 5 U.S.C. § 704.  They contend that they have not engaged in "separate final agency action" because they "are merely implementing [the] discretion" that the two pertinent statutes "delegate" to the President.  They also contend, seemingly relatedly, that because "the Proclamation set the payment, not the [Policy]," the Policy is not "'final agency action[]' because no 'rights or obligations have been determined'" by it.  (Quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997).)

We note, however, that in attempting to establish -- as they must -- that they will be irreparably harmed in the absence of the requested stay, the defendants contend that "[e]very day that passes" in which the district court's order vacating the Policy remains in place "more aliens can petition and enter the country."  It is hard to see how that can be the case if the Policy does not in and of itself constitute "separate final agency action" that imposes "rights or obligations."  Yet the defendants make no effort to square that circle.  In addition, the defendants fail to cite to, much less wrestle with, this Court's precedent in Agatha v. Trump, which noted that "agency action that carries out a presidential directive is ordinarily subject to APA review."  151 F.4th 9, 11 (1st Cir. 2025); see also Franklin v. Massachusetts, 505 U.S. 788, 828 (1992) (Scalia, J., concurring in part and concurring in the judgment) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive . . . .").  They instead rely chiefly on an out-of-circuit district court opinion that explicitly avoids "wading into th[e] uncertain terrain" of whether "an agency's implementation of a presidential directive constitutes 'final agency action' reviewable under the APA."  Chamber of Com. of U.S. v. U.S. Dep't of Just., 815 F. Supp. 3d 73, 108-10 (D.D.C. 2025).  We therefore conclude that the defendants have not made a "strong showing" that they are likely to succeed on their "final agency action"-based challenge either.

Having explained why the defendants have not met their burden as to the first Nken factor, we can briefly address the remaining Nken factors.  We may assume, as to the second Nken factor, that the defendants have sufficiently shown that they would be irreparably harmed in the absence of a stay.  But they have not shown, as to the third Nken factor, why the plaintiffs would not be substantially injured by a stay.  Instead, they argue that the plaintiffs would not be "irreparably harmed" and largely train their arguments on the plaintiffs' alleged ability to make up for interim harms that may flow from the imposition of the $100,000 payment requirement before this

litigation concludes.  They otherwise cursorily assert that the plaintiffs would face "minimal" harm without developing that argument -- if it does constitute an argument as to the plaintiffs' lack of substantial injury -- further.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  And while the defendants contend as to the fourth and final Nken factor that, absent a stay, the labor market harms that the Proclamation was meant to address -- lower wages and replacement of American workers -- will continue to occur, they fail to explain why a stay would not harm the public in the manner that the plaintiffs attribute to the $100,000 payment requirement.

In sum, the defendants have failed to make a strong showing as to the critical likelihood-of-success factor, and their arguments regarding the remaining Nken factors present, at most, a mixed picture.  See Am. Fed'n of Gov't Emps. Loc. 2305 v. U.S. Dep't of Veterans Affs., 177 F.4th 1, 13 (1st Cir. 2026); see also Ind. State Police Pension Tr. v. Chrysler LLC, 556 U.S. 960, 960-61 (2009) (per curiam) (noting that "[a] stay is not a matter of right, even if irreparable injury might otherwise result" and suggesting that "in a close case . . . balanc[ing] the equities" "may be appropriate" (citation modified)).  Accordingly, we **deny** the defendants' motion to stay pending appeal to this Court the district court's June 8, 2026, Memorandum and Order and accompanying Judgment.

The Federation for American Immigration Reform and Professor Michael Clemens' motions for leave to file amicus curiae briefs are granted, and the briefs are accepted for filing this day.

By the Court:

Anastasia Dubrovsky, Clerk

cc:  Hon. Leo T. Sorokin, Robert Farrell, Clerk, United States District Court for the District of Massachusetts, Helen H. Hong, Denise Yesenia Levey, Lorraine Lopez, Marissa Malouff, Michael Louis Newman, Julie Veroff, James Edward Stanley, James Everett Richardson, Nita Kumaraswami Klunder, Gerard J. Cedrone, Michelle R. Pascucci, Julia S. Canney, Joshua Nomkin, Jaylia Yan, David Moskowitz, Michael Kenneth Skold, Vanessa L. Kassab, Ian R. Liston, Jennifer Kate Aaronson, David Dana Day, Kalikoonalani Diara Fernandes, Sarah A. Hunger, Virginia Anne Williamson, Neil Giovanatti, Joseph Robert Richie, Kiel Ireland, Melina Maria Meneguin Layerenza, Barbara D. Underwood, Victoria Ochoa, Zoe Levine, Judith N. Vale, Daniel Paul Mosteller, Laura Howard, Robert A. Koch, Kyla Duffy, Jonathan T. Rose, Kate S. Worthington, Sara L. Wilmot, Faye B. Hipsman, Donald Campbell Lockhart, Abraham R. George, Tiberius T. Davis, Jeffrey Alderette, Matt A. Crapo, Christopher J. Hajec, Edwin E. Pieters, Anisha S. Dasgupta, Kamilyn Yoonsuh Choi